SHEILA SLAUGHTER *vs.* GERALD F. McVEY.

Middlesex.  June 7, 1985. — September 16, 1985.

Present: KASS, CUTTER, & FINE, JJ.

*Divorce and Separation*, Separation agreement, Reopening of proceedings, Division of property, Findings by judge, Child support.

Where the parties in a divorce action brought under G. L. c. 208, § 1B, had entered into a separation agreement after a pretrial hearing during which the judge pressed strongly for settlement, where the judge in ordering judgment incorporating the agreement had made no independent findings that the agreement was fair and reasonable, and where, a month after the nisi period had run, the judge, acting in response to motions filed by the parties before the expiration of the nisi period, had entered an order vacating the financial provisions of the judgment, but had ordered that the judgment nisi "with respect to the divorce" become final, it was within the authority of a second probate judge to retry the financial issues in the case in a subsequent proceeding. [772-773]
On appeal from a divorce judgment, there was no merit to the husband's contention that a probate judge holding a hearing on financial aspects of the divorce had assessed the fairness and reasonableness of a separation agreement between the parties as of the time he made his decision in 1983, rather than as of the time the agreement was made in 1979. [773]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on July 18, 1978.

The case was heard by *Edward M. Ginsburg*, J., and, after further proceedings, was heard by *James M. Sweeney*, J.

Following review by this court, 18 Mass. App. Ct. 1108 (1984), a memorandum was filed by *Sweeney*, J.

*Lawrence T. Perera* (*Kathleen A. Bryan* with him) for the defendant.

*Barry J. Connelly* (*Robert J. O'Regan* with him) for the plaintiff.

KASS, J.    Although framed and articulated more sharply in this second appeal, the core issue argued for McVey was decided in 1984 in an unpublished order rendered under Rule 1:28 of this court.[1] An appellate court generally declines to reconsider questions decided in an earlier appeal in the same case.[2] *Peterson* v. *Hopson*, 306 Mass. 597, 599 (1940). *New England Merchs. Natl. Bank* v. *Old Colony Trust Co.*, 385 Mass. 24, 26 (1982). Of course, assuming the question is validly before us, we will not adhere doggedly to a manifest error committed in a previous decision, but we think the previous decision in this case was sound. Some issues have arisen from proceedings subsequent to our previous decision. We also comment about the circumstances which appear to have spawned a course of legal wrangling that is Dickensian in its procedural complexity and duration.

The subject is property settlement on divorce. Sheila Slaughter, formerly Sheila McVey, and Gerald McVey were married in 1968. On July 18, 1978, Slaughter initiated a divorce action under G. L. c. 208, § 1B (irretrievable breakdown without accompanying separation agreement). When the matter came on for pretrial hearing on October 30, 1979, the Probate Court judge (Judge A) pressed strongly for settlement. After an initial conference, Judge A dispatched the parties and their lawyers to negotiate. Those negotiations produced sufficient success to warrant a further conference among the parties, their counsel, and Judge A. Substantial agreement was registered by the participants, and Judge A instructed the parties to reduce the ingredients of the agreement to writing in the courthouse that day. Counsel did so. The parties signed the handwritten document. Judge A on the same day entered a judgment of divorce nisi which incorporated the agreement.

What followed illustrates the peril and unwisdom of a probate judge's applying excessive pressure on parties and their counsel

---

[1] *Sheila Slaughter* vs. *Gerald F. McVey*. No. 83-1146. The disposition of that case is noted at 18 Mass. App. Ct. 1108 (1984). Successor counsel has represented the defendant-appellant, Gerald F. McVey, on this appeal.

[2] See as to petitions for rehearing of the same appeal, Mass.R.A.P. 27, 365 Mass. 874 (1974).

to reach a definitive settlement before they leave the courthouse. All litigation has emotional content and in divorce litigation the feelings are likely to run particularly high and raw. It is doubtless constructive for a probate judge to attempt to narrow areas of disagreement and to suggest accommodations.[3] Parties ought to have an opportunity, however, to see agreements worked out in detail and written down, to discuss them privately with counsel in relatively calm surroundings — all of which is to say they ought to have a chance to give a matter which so affects their lives a modicum of reflection. Here Judge A overexercised a trial judge's privilege of placing pressure on parties to settle a case. Contrast *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 86 (1984), in which counsel requested suspension of a trial to pursue settlement negotiations for several days voluntarily, reported settlement, and orally read the detailed settlement agreement into the record in the presence of the parties, after which the judge carefully questioned the parties about their understanding and consent to that agreement.

Both parties soon repented of their agreement. Two months after the judgment nisi, on January 10, 1980, McVey, the husband, filed a motion for relief from judgment under Mass.R.Dom.Rel. 60(a) and (b) (1975). He claimed the handwritten agreement did not accurately reflect what had been agreed. On April 10, 1980, the husband moved for leave to withdraw his motion for relief from judgment. Fifteen days later, on April 25, 1980, not quite six months after the judgment nisi, the wife petitioned under G. L. c. 208, § 21, to vacate the judgment and to dismiss the action for divorce without prejudice.[4] She accompanied her petition with an affidavit that

---

[3] As to the risk of forfeiture of neutrality which may accompany the judge's role in that process, see *Furtado* v. *Furtado*, 380 Mass. 137, 151-152 (1980).

[4] The wife did not, in 1980, have the benefit of *Mailer* v. *Mailer*, 387 Mass. 401 (1982), in which it was held, at 405, that dissatisfaction with the financial aspects of the judgment nisi is not a proper ground for dismissal of a complaint for divorce under G. L. c. 208, § 21. "Rather than moving to dismiss the complaint, a plaintiff who is dissatisfied with an alimony or property settlement should appeal the judgment nisi." *Ibid.*

she had signed the agreement "without full knowledge of the facts or of . . . [her] rights" and that, for various reasons, the agreement was unfair to her and inequitable. Now there were only five days to spare before the judgment nisi was to ripen into a judgment absolute.[5] Judge A, with agreement of counsel, ordered an extension of the period during which the judgment nisi was not to become absolute.

On May 30, 1980, Judge A manifested second thoughts about the agreement. Purportedly acting on the husband's motion for relief from judgment (which the husband had sought to withdraw), Judge A ordered that so much of the divorce judgment nisi "as pertains to custody, child support, and the division of assets" be vacated subject to conditions, and called for a further hearing on the merits.[6] He also ordered that the judgment nisi "with respect to the divorce," presumably as distinct from the custody and financial aspects of the nisi judgment, become final.

For reasons less than apparent on the record, on October 22, 1980, Judge A, on his own motion, vacated the order of May 30, 1980, and entered a temporary order, "pending a final determination of the case on the merits," that the parties comply with the financial terms of the 1979 agreement hammered out in the courthouse. Perhaps, as we surmised in our previous decision, Judge A realized "that the proceeding had become unduly confused by orders, which we regard as far from clear in meaning and effect."

Three years of discovery ensued. In July, 1983, the case was tried anew to a different probate judge (Judge B). The disputed issues were financial; there was no attempt to alter the status

---

[5] It is open to a party to stay the judgment becoming absolute by filing a statement of objections to the judgment becoming absolute. Mass. R.Dom.Rel. 58(c) (1975). *Scholz* v. *Scholz*, 367 Mass. 143, 144 (1975).

[6] The conditions, with which the wife complied, included requirements that she pay $9,000 to the husband toward his legal fees and costs and $1,220 on account of arrearages in child support payments. The order also said that the judgment nisi was to become final forthwith, although the first part of the order suspended the financial and custody terms of the judgment nisi.

of the parties as divorced or the husband's custody of the parties' daughter. At the conclusion of the trial, Judge B entered a new judgment nisi with provisions for child support and a division of assets substantially less generous to the husband than those in the 1979 separation agreement.

Our earlier decision disposed of an appeal by the husband from the 1983 judgment by Judge B. We remanded the case to the Probate Court for clarification (preferably by Judge B, because he had presided at the 1983 trial) whether the basis of the different financial orders was that Judge B had regarded the 1979 agreement as unfair and unreasonable and whether any continuing significance was to be given to the 1979 agreement.

After the remand Judge A wrote a memorandum in which he explained that his intention in making his October 22, 1980, order was to set aside the agreement of the parties and to have them relitigate the financial issues between them. Judge B wrote an amplifying memorandum that he had concluded the 1979 agreement had not been fair and reasonable and that it had also been mutually rescinded by the parties. He reaffirmed his judgment. From that action of Judge B the husband brought the appeal now before us.

1. Whether Judge B had jurisdiction to retry the case was an issue squarely presented and decided in the previous appeal. The further argument on this score rests on the premise that the first judgment of divorce had become absolute. It is possible to make that assumption only by ignoring the consistent thread in Judge A's orders and concentrating on subparagraphs which could — although they need not — be read to the contrary. Even had the judgment become final, the judge, in his discretion, could have vacated the judgment under Mass.R.Dom.Rel. 60(a), (b) (1), or (b) (6), if he had concluded that the agreement of October 30, 1979, either failed to reflect the parties' understanding or, upon reflection, might have been unfair and unreasonable from the outset. Cf. *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 429-434 (1979). Contrast *Grindlinger* v. *Grindlinger*, 10 Mass. App. Ct. 823, 823-824 (1980).

That 1979 agreement, upon which the husband so heavily relies, was vulnerable to timely attack for the reason that Judge A had made no independent findings that the original separation agreement was fair and reasonable. *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 91-92 (1984). See *Knox* v. *Remick*, 371 Mass. 433, 436-437 (1976); *Stansel* v. *Stansel*, 385 Mass. 510, 514-515 (1982). Far from finding the agreement fair and reasonable. Judge A, upon reflection, harbored doubts on that very issue. The financial issues were, therefore, open and properly susceptible to inquiry by Judge B in 1983. Whether the divorce component of the original 1980 judgment was open is surely moot since neither party questions the fact of divorce. Cf. *Gilmore* v. *Gilmore*, 369 Mass. 598, 599-600 (1976). Insofar as the judgment of August 1, 1983, by Judge B granted a divorce anew, it had no practical effect on the contested interests of the parties.

2. We do not think that Judge B's findings, at the time of his judgment, and upon remand, support the husband's contention that Judge B assessed the fairness and reasonableness of the agreement as of August, 1983, rather than as of the time when the agreement was made, October, 1979. Rather the judge appears to have surveyed the marital assets as of 1979, and to have been moved by his finding that marital assets susceptible to division had come from the wife's father and that, under the agreement, the bulk of what remained, after the husband's failed investments, was to become the husband's property. That allocation, in view of the parties' respective earning power and other assets, the judge found unfair and unreasonable.

3. The husband attacks ten findings made by Judge B in his memorandum after remand as erroneous because contradicted by the record. The deviations described are minor and would not compel a different result. The findings are not clearly erroneous in the sense that on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 159-160 (1977). *C. C. & T. Constr. Co.* v. *Coleman Bros.*, 8 Mass. App. Ct. 133, 135 (1979).

4. An aspect of the original separation agreement was a provision for the establishment of a trust fund for the education of the parties' minor child. The husband now argues for the first time that Judge B impermissibly overlooked the interests of the child by failing to make a similar disposition. The point was lost when not raised on the first appeal. *Gram* v. *Liberty Mut. Ins. Co.*, 391 Mass. 333, 335 (1984). Judge B did not make orders for support of the child. Should the child in the future not be adequately provided for, the court retains jurisdiction to devise an appropriate remedy. *Buchanan* v. *Buchanan*, 353 Mass. 351, 353 (1967). *Knox* v. *Remick*, 371 Mass. at 437-438.

*Judgment affirmed.*