JAMES W. LAVIN *vs.* JANE M. LAVIN. June 5, 1987. *Divorce and Separation,* Separation agreement, Division of property, Pension benefits. *Contract,* Separation agreement. *Evidence,* Expert opinion, Value. *Value.*

One week before a scheduled hearing under G. L. c. 208, § 1A,[1] Jane M. Lavin, the wife, filed a motion to strike the separation agreement (as required by § 1A, the agreement had been filed with the complaint). She alleged that the agreement: was not a fair distribution of marital assets; had been signed without full reflection on her part; and had been executed without full disclosure by her husband, James W. Lavin. On appeal, the husband urges that the judge was bound to acquiesce in the separation terms which the signed agreement reflected and that, in all events, the alimony, support, and property distribution provisions of the divorce judgment are erroneous.

With the motion to strike before him, the trial judge proceeded to inquire whether the separation agreement met the criteria of G. L. c. 208, § 1A, and whether the agreement was fair and reasonable and free of fraud. During the cross-examination of the husband, the judge ruled that he would not approve the agreement because the financial information given by the husband when the agreement was negotiated was different from the financial information provided at the hearing. It had become apparent from the husband's testimony and his revised financial statement that major assets of the husband were not reflected in the agreement.

After a full trial,[2] the judge found that during the negotiations leading to the agreement the wife had been under "serious emotional distress and pressure," connected with selling the marital dwelling and buying a new house and that she had been medicated with valium. He found that the agreement made no provisions for the division of the husband's interest in three significant assets: the Willard Street School property, the South Bayshore Management Corporation stock, and the South Bayshore Management Corporation's pension and profit-sharing plans. Accordingly, the judge concluded, the agreement was not "totally fair and reasonable,"[3] and he dismissed "so much of the plaintiff's case as rests on" § 1A.

---

[1] The original complaint for divorce was filed by James W. Lavin on August 23, 1983, on the ground of cruel and abusive treatment, G. L. c. 208, § 1. A motion to amend the complaint to allege the ground of irretrievable breakdown, G. L. c. 208, § 1A, was allowed on July 6, 1984.

[2] On the second day of trial, the judge discussed with the parties how to proceed in light of the dismissal of the § 1A complaint. The judge gave the parties a choice of amending the § 1A complaint or proceeding on a previously filed separate support petition. Since the judge had not issued a written ruling with findings on the § 1A complaint, the husband amended his complaint to "either § 1A or § 1B" in order to preserve an appeal under § 1A, as well as leave open the possibility of a change of view on the part of the judge.

[3] Although the husband makes much of the judge's use of the adjective "totally," we are unpersuaded that the judge used a higher standard than "fair and reasonable" in considering the agreement.

1. *Status of the separation agreement.* Relying upon *Moore* v. *Moore,* 389 Mass. 21, 23-24 (1983), the husband argues that a separation agreement voluntarily signed by the parties may not be altered by the Probate Court. It is a reliance which overlooks that the *Moore* opinion presupposes the fairness, reasonableness, and freedom from fraud of the underlying agreement. See also *Reeves* v. *Reeves,* 318 Mass. 381, 384 (1945); *Knox* v. *Remick,* 371 Mass. 433, 436-437 (1976); *Dominick* v. *Dominick,* 18 Mass. App. Ct. 85, 91-92 (1984); *Slaughter* v. *McVey,* 20 Mass. App. Ct. 768, 773 (1985). More to the point, the express language of G. L. c. 208, § 1A, requires the judge to find whether the parties' agreement "has made proper provisions for custody, for support and maintenance, for alimony and for the disposition of marital property. . . ." Under the second paragraph of § 1A, if the judge does not approve the agreement as executed, it "shall become null and void. . . ." In the run of cases brought under § 1A, a probate judge will doubtless, as a practical matter, incline to ratify that to which parties have previously agreed, but that inclination is checked by the judge's statutory duty of scrutiny.

2. *The finding that the separation agreement was not fair and reasonable.* We are satisfied by the record that the judge, in reaching the conclusion that the separation agreement was not fair and reasonable, measured it by the criteria spelled out in *Dominick* v. *Dominick,* 18 Mass. App. Ct. at 92. That is apparent from the judge's questioning of the husband, as well as the judge's written findings. In support of those findings there was ample evidence that the husband had not, while the separation agreement was negotiated, disclosed the assets previously adverted to. The judge could be forgiven for regarding skeptically the husband's valuing as "zero" his eight percent interest in a real estate project which carried an institutional first mortgage of $3,300,000. The judge's findings are not clearly erroneous. Mass.R.Dom.Rel.P. 52(a) (1975). *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 159-160 (1977). *C.C. & T. Constr. Co.* v. *Coleman Bros. Corp.,* 8 Mass. App. Ct. 133, 135 (1979).

3. *Distribution of property ordered by the judge.* Two divorce judgments entered: the first on the husband's complaint under G. L. c. 208, § 1B; the second on the wife's cross-complaint under G. L. c. 208, § 1, based on cruel and abusive treatment. See *Gilmore* v. *Gilmore,* 369 Mass. 598, 599 (1976); *Singer* v. *Singer,* 8 Mass. App. Ct. 113, 117 (1979). Much of each judgment adhered to the general pattern of the separation agreement. The husband's grievances on appeal are with so much of the judgments (they track one another) as contain distribution of property orders based on the South Bayshore Management Corporation (Bayshore) stock, Bayshore's pension and profit-sharing plan, and the Willard Street School property.

---

[3] Although the husband makes much of the judge's use of the adjective "totally," we are unpersuaded that the judge used a higher standard than "fair and reasonable" in considering the agreement.

(a) *The Bayshore stock*. The judge found that although Bayshore had a stockholder's equity of $120,143.12, there was no ready market for its stock because the corporation was closely held. He further found that the corporation had been used as a vehicle for borrowing, i.e., it had realizable value. That stock is not readily saleable does not mean it is without value. The judge's appraisal of the husband's Bayshore stock at $12,000 was neither inconsistent nor erroneous. Contrast *Caldwell* v. *Caldwell*, 17 Mass. App. Ct. 1032, 1033 (1984).

(b) *The Bayshore pension plan*. When it is appropriate to include pension rights in an equitable division, the judge has a measure of discretion in deciding whether to assign a percentage of present value as a property asset or to allocate benefits if and when received. *Dewan* v. *Dewan,* 17 Mass. App. Ct. 97, 101-102 (1983). Assignment of a percentage of present value is the preferable approach because it deprives the combatants of one less subject to argue about at a later date. *Dewan* v. *Dewan,* 399 Mass. 754, 757 (1987). Here, the husband expressed no preference for a present value approach. There was no testimony at trial from an actuary or other expert establishing any present value of benefits from the plan, and the plan itself was not introduced. In the circumstances, it was acceptable to allocate to the wife seven and one-half percent of benefits if and when received. There was no error.

(c) *Valuation of the Willard Street School property*. The husband protests that the real estate expert offered by the wife to appraise the Willard Street School property was not sufficiently qualified to testify and that the judge's assignment of value to that property was consequently flawed. A trial judge enjoys wide discretion in ruling on the qualifications of an offered expert. That discretion is seldom disturbed. *Muzi* v. *Commonwealth,* 335 Mass. 101, 106 (1956). *Venini* v. *Dias,* 5 Mass. App. Ct. 695, 697 (1977). The judge must look to the expert's education, training, experience, and familiarity with the subject matter of his testimony. *Edinburg* v. *Merry,* 11 Mass. App. Ct. 775, 777 (1981). Here, the putative expert, Garvin, testified that: he had worked as an appraiser; he had twice before testified in Massachusetts courts on value; he was familiar with the field of construction and he was in the process of earning professional designations in the appraisal field. These were not overpowering credentials, but the judge acted within his descretion in allowing Garvin to testify. See *Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.,* 362 Mass. 306, 309 (1972); *Commonwealth* v. *United Books, Inc.,* 389 Mass. 888, 896 (1983); *Commonwealth* v. *Smythe,* 23 Mass. App. Ct. 348, 353-354 (1987).

Garvin testified in detail about the methods of appraisal he had used and the information he had relied upon in calculating the value of the property. He based his opinion primarily on the income capitalization method. See *Correia* v. *New Bedford Redev. Authy.,* 375 Mass. 360, 362 (1978). The figures that Garvin used in his capitalization analysis were those which the developers of the property had submitted to the bank which held the construction loan. He also had some market data. His

conclusion was not based on mere guesswork or conjecture. See *General Elec. Co.* v. *Assessors of Lynn,* 393 Mass. 591, 602 (1984).

Garvin's methods and calculations were thoroughly explored through cross-examination. *Bird* v. *Boston Redevelopment Authy.,* 8 Mass. App. Ct. 659, 662 (1979). In addition to Garvin's testimony, the judge heard testimony from the husband and Louis Grossman, a codeveloper, regarding the project. He also had before him documentation from the files of the bank regarding the project. The judge did not abuse his discretion in giving Garvin's testimony some weight. See *General Elec. Co.* v. *Assessors of Lynn, supra* at 602.

The judgments were stayed pending appeal. It appears necessary to recompute the monthly payments prescribed in the fourth paragraph of each judgment. The case is remanded for modification of the judgments in that respect. As so modified, the judgments are affirmed.

*So ordered.*

*Ellen S. Zack* for the plaintiff.
*Charles S. Kelly* for the defendant.