LOUISE A. GRIFFITH *vs.* MARTIN N. GRIFFITH. June 22, 1987. *Practice, Civil*, Self-representation. *Divorce and Separation*, Alimony, Attorney's fees.

Dr. Griffith, a physician, chose to conduct his own defense to a complaint for modification brought by his former wife. Such a complaint had been invited by the findings and orders of the Probate Court judge made in connection with the divorce. At that time, Dr. Griffith was not employed, and, in consequence, the judge limited the imposition of monetary obligations upon Dr. Griffith to $100 per week for child support. The judge's order provided that "either party may apply to this Court to make a further

---

order of alimony or child support commensurate with his then earnings." The trial of the modification complaint deteriorated frequently into irrelevant quarreling between the former spouses and frustrated exchanges between the judge and Dr. Griffith. Predictably, the matter has concluded with a judgment which Dr. Griffith thinks is unfair and improperly arrived at. We have reviewed the entire record and affirm the judgment.

1. *Fairness of the proceedings.* Dr. Griffith may not complain that he was surprised by having been ordered to commence trying the case at the pretrial conference. Notice of the pretrial conference had warned that "the case is subject to immediate trial *on that day*" (emphasis in original). Lawyers would have known to take that instruction seriously; the judge who issued the notice had achieved modest celebrity for giving the "immediate trial" warning teeth. See, e.g., *Beninati* v. *Beninati*, 18 Mass. App. Ct. 529, 530-532 (1984). Pro se litigants are not exempt from rules of practice and procedure. *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 846-847 (1983). As in *Hunnewell* v. *Hunnewell*, 15 Mass. 358, 362 (1983), the husband was the author of his predicament. Dr. Griffith was not without means. Indeed, the extent of his means was what the proceedings in the Probate Court were all about.

Management of a trial in which a litigant appears pro se draws heavily on the patience, skill and tact of the presiding judge. *Oko* v. *Rogers*, 125 Ill. App. 3d 720, 723-724 (1984). The judge's reserves of those attributes were soon exhausted. He cut off further presentation of evidence by Dr. Griffith and proceeded to dictate findings and an order upon which a judgment of modification entered. It would have taken little time to draw from Dr. Griffith what further explanation he wished to make and for the judge to explain to Dr. Griffith what had moved him to decision. Dr. Griffith might then have felt less passionately that he had not been listened to by the judge. The appearance of justice is not as important as the reality, but it is a factor to be reckoned with. Essential justice was done here. The judge, in the first instance, gave Dr. Griffith considerable scope. The judge's patience snapped when it developed, on cross-examination, that Dr. Griffith's claim of an income of $65,000 per year was a projection of anticipated earnings, following two years in which his earnings had fluctuated around $175,000 per year. During that period Dr. Griffith had also bought a yacht for charter purposes and had acquired a house for which he paid $155,000 cash. The judge had also learned that Louise's gross income as a nurse during the same period, inclusive of overtime, was around $28,000. Reasonably, the judge concluded that he had acquired sufficient information (in addition to testimony, he had financial statements, tax returns, and balance sheets of the husband's professional corporation) about the narrow question before him: whether Dr. Griffith could pay more than the $100 per week in child support required by the original divorce judgment.

When the trial resumed after the lunch recess, the judge discussed settlement proposals. Dr. Griffith argues that the judge became so actively

involved in the case that he forfeited the essence and appearance of impartiality. See *Furtado* v. *Furtado*, 380 Mass. 137, 151 (1980). The record does not bear this out. Especially because of the husband's penchant for straying into considerations that were not legally relevant the judge was warranted in attempting to narrow the issues, putting questions, and directing the course of the trial. See *Commonwealth* v. *Campbell*, 371 Mass. 40, 45 (1976); *Slaughter* v. *McVey*, 20 Mass. App. Ct. 768, 770 (1985). Evidence received, rather than preconceptions, appeared to dictate the judge's disposition, which differed from settlement proposals he had discussed. See *King* v. *Grace*, 293 Mass. 244, 247 (1936); *Commonwealth* v. *Coleman*, 390 Mass. 797, 802 (1984).

2. *The alimony award.* As noted, the divorce judgment was framed to take into account Dr. Griffith's then straitened circumstances and the judge's supporting findings and rulings foreshadowed a "further order of alimony or child support" should Dr. Griffith's situation improve. Louise's complaint could be read as brought under G. L. c. 208, §§ 28 and 37. It asked "support for herself and the minor child, Jonathan." A complaint under § 37 presupposes a previous award of alimony but, when no such award has been made, may be read as a request for alimony under G. L. c. 208, § 34. *Baird* v. *Baird*, 311 Mass. 329, 331-332 (1942). *Kinosian* v. *Kinosian*, 351 Mass. 49, 52 (1966). Dr. Griffith's grievance on appeal is that his former wife's complaint failed to warn him that alimony might be awarded and that emphasis by the judge at trial on support as the central issue in the case further derailed him. What point Dr. Griffith is attempting to make is not clear. It was apparent that Louise was asking for support for herself as well as for her youngest child (two of the parties' children were of age). Spousal support is the crucial element in alimony. *Partridge* v. *Partridge*, 14 Mass. App. Ct. 918, 919 (1982). *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985). Dr. Griffith does not explain how the failure to use the term "alimony" altered his presentation or the result.

A further ground of appeal is that the judge failed to consider all the criteria of G. L. c. 208, § 34. The judge had, in fact, done so in connection with the divorce judgment. It was not necessary to repeat the exercise. What mattered in the modification proceeding was the current financial situation of the parties, obligations of support, and whether there had been a material change in circumstances from the time of the divorce. These the judge considered, noting, among other things, the earnings and earning capacity of each of the parties, the circumstance of a marriage of twenty-two years, and the status of the children. We do not think any significant issue under § 34 was ignored. *Mancuso* v. *Mancuso*, 12 Mass. App. Ct. 973, 974-975 (1981). *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 82 (1985). See also *Heistand* v. *Heistand*, 384 Mass. 20, 27 (1981).

3. *Tax considerations.* The judgment of modification was for $740 per week "as alimony and child support undifferentiated." So far as now material, if Jonathan ceases to attend college as a full time student or attains his

twenty-first birthday, the alimony shall be reduced to $310 per week. Dr. Griffith charges the trial judge with having failed to consider tax consequences. None was called to the judge's attention. See *Wolfe* v. *Wolfe*, 21 Mass. App. Ct. 254, 258 n.7 (1985). How the judgment disadvantages Dr. Griffith as to his tax situation is not clear. The judgment was cast in terms of undifferentiated alimony and support, leaving Dr. Griffith with some flexibility.[1] It is obvious that at least $310 of the $740 per week is alimony. The judge invited the parties to propose a form of revised judgment which would minimize adverse tax consequences. They failed to do so. The judge committed no error.

4. *Legal fees*. The judgment of modification ordered Dr. Griffith to pay Louise's attorney[2] $7,500 in legal fees. We have recently reviewed the criteria in *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 540-544 (1985). *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 192, 198 (1986). See also *Olmstead* v. *Murphy*, 21 Mass. App. Ct. 664, 665 (1986). The judge was familiar with the case and the skill and standing of the wife's counsel. There was available to the judge an affidavit concerning the time spent by counsel. The judge's award of legal fees is supportable on the record.

*Judgment affirmed.*

*Richard D. Packenham* for the defendant.
*David H. Lee* (*Susan K. Greb* with him) for the plaintiff.

---

[1] Prior to the Tax Reform Act of 1984, Pub.L. 98-369, I.R.C. § 71 (1984), an award of undifferentiated alimony and child support afforded the payor spouse maximum flexibility, i.e., the payor spouse could treat the entire payment as alimony, deductible from the payor spouse's income. The rule that a payor spouse might do so was announced in *Commissioner* v. *Lester*, 366 U.S. 299 (1961), and the process of allowing divorcing spouses to allocate income tax burdens between themselves to maximize tax benefits became known as "lestering." Lestering was sharply limited by the 1984 tax amendments. Under I.R.C. § 71 (c), as amended, even if a payment has not been fixed in the divorce or separation instrument as child support, there are instances (e.g., if a payment is reduced upon a child's attaining a certain age) where the payment will be treated as support. There are also, as a consequence of the 1984 amendments, recapture provisions for excess "front-loading" of alimony payments. See I.R.C. § 71 (f). Those recapture provisions were further amended by the Tax Reform Act of 1986, Pub.L. 99-514.

[2] Her trial counsel has died and successor counsel briefed and argued the appeal.

