GREGORY D. BOTSARIS *vs*. CHRISTINE BOTSARIS
(and a companion case[1]).

Nos. 87-330 & 87-712.

Middlesex, March 7, 1988. — July 29, 1988.

Present: GRANT, DREBEN, & WARNER, JJ.

*Divorce and Separation,* Relief from judgment, Separation agreement. *Practice, Civil,* Continuance, Judicial discretion, Disqualification of judge. *Judge.*

In the circumstances of a divorce proceeding the judge erred in denying the wife's motion for a continuance of the trial based on an unchallenged showing of the wife's legitimate illness. [256-258]

In a divorce proceeding wherein the judge improperly denied a motion for continuance of the trial based on the wife's legitimate illness, whereupon the wife proceeded to negotiate a settlement rather than immediately commence a contested trial, this court held that the wife had been deprived of her fundamental right to a trial. [258-259]

Although on the record of a divorce proceeding it was not error for the judge not to have disqualified himself on his own motion, in the circumstances of the case, further proceedings on remand were to be held before a different judge. [260-261]

COMPLAINTS for divorce filed in the Middlesex Division of the Probate and Family Court Department on February 25, 1985, and April 18, 1985, respectively.

The cases were heard by *Edward M. Ginsburg,* J.

*Sheldon H. Ganz* for Christine Botsaris.

*Debra Grossman* for Gregory D. Botsaris.

WARNER, J. On June 19, 1986, in circumstances which will be discussed below, judgments of divorce nisi incorporating a settlement agreement were entered for each party. The wife appeals from the denial of her motions for (1) a continuance of trial (Mass.R.Dom.Rel.P. 40[b] [1975]), (2) a new trial

---

[1] The companion case is between the same parties.

(Mass.R.Dom.Rel.P. 59[a] [1975]), (3) recusal of the judge, and (4) relief from the judgments (Mass.R.Dom.Rel.P. 60[b] [1975]).

1. *The motion to continue.* The husband's complaint was filed on February 25, 1985, and the wife's on April 18, 1985. The docket entries in the cases show unremarkable activity — temporary orders and discovery requests — until a pretrial notice and order was issued on April 11, 1986. To the apparently standard directions of that document there had been added: "The case may be ordered to immediate trial on the date of the pretrial if the court determines . . . that (a) the parties to the action will be the only witnesses; or (b) one party, through a failure to appear at the pretrial or otherwise, will not present a case; or (c) such commencement of trial is necessary in the judge's discretion to accomplish justice." See *Beninati* v. *Beninati*, 18 Mass. App. Ct. 529, 530 (1984); *Griffith* v. *Griffith*, 24 Mass. App. Ct. 943, 944 (1987).[2]

On June 13, 1986, new counsel appeared for the wife and filed a motion for a continuance of trial for sixty days in the event that the parties should be unable to reach settlement; the ground was the wife's illness. Attached to the motion was a detailed report of an evaluation of the wife on June 10, 1986, by her personal physician. The report gave a diagnosis of the following: eosinophilic fasciitis (a rare inflammatory disease which affects the membranes which hold bones and muscles together and which causes pain and fever), diabetes mellitus, chronic pulmonary disease, chronic liver dysfunction, and

---

[2] The pretrial notice and order was issued pursuant to Mass.R.Dom.Rel.P. 16 (1975). The purposes of a pretrial conference are to pare and hone the legal and factual issues for subsequent trial and to explore the possibilities of settlement. The last sentence of the standard Probate and Family Court notice and order used in this case announces that if the case is settled, the pretrial conference time assigned may be used for hearing on the merits on an *uncontested* basis. The added caveat that *contested* cases may be subject to immediate trial may in some respects, at least as to a first pretrial conference, be incongruous with the purposes underlying rule 16 and with those expressed in the standard notice and order. See *Slaughter* v. *McVey*, 20 Mass. App. Ct. 768, 769-770 (1985); Freedman et al., Massachusetts Family Law Manual 8-1 to 8-7 (1986); Rotenberg, Domestic Relations: The Substantive Law 57-61 (1984 & Supp. 1985).

peripheral neuropathy with painful manifestations and recent closure of tracheostomy. The report stated that the stabilization of these conditions had not been favorable and that the wife needed a "medical leave of absence" from the divorce proceedings in order to undertake psychiatric and medical treatment. In a supplemental report, dated June 16, 1986, the doctor said that the wife was "currently in the midst of a severe emotional and physical crisis, complicated by an extraordinarily complex disorder termed 'eosinophilic fasciitis,' and has as a consequence of this, innumerable physical problems as well as a severe situational psychological reaction. [The wife] is incapable, at this time, of pursuing the rigors of legal proceedings and is bordering upon hospitalization as a necessity to control her symptoms . . . ." The doctor reported that in his opinion the wife's problems would be under control in sixty days.

The motion for continuance was presented to the judge at the call of the pretrial conference. The husband presented no opposing documentary evidence, and we do not have a transcript of argument made on the motion.[3] The judge denied the motion and presented the alternative of attempting to negotiate a settlement or of commencing an immediate contested trial; the parties proceeded to negotiate.

We review the judge's denial of the motion for continuance to see whether there has been abuse of discretion. *Ackroyd's Case*, 340 Mass. 214, 218 (1960), and cases cited. *Hunnewell* v. *Hunnewell*, 15 Mass. App. Ct. 358, 363 (1983). "Continuances *shall* be granted only for good cause . . ." (emphasis supplied). Mass.R.Dom.Rel.P. 40(b) (1975). "The legitimate illness of a litigant is generally 'good cause' for granting a continuance." *Monahan* v. *Washburn*, 400 Mass. 126, 129 (1987). On ruling on a motion for continuance based on illness, the judge is, of course, entitled to look at what has gone before and to consider the quality of supporting documentation. See

---

[3] The husband makes a passing argument that the motion was procedurally deficient. The parties agree that the judge held a hearing on the motion and denied it. "In the absence of a . . . specific finding that [the judge treated] the motion [as] procedurally defective, we will not assume [that he did so]." *Monahan* v. *Washburn,* 400 Mass. 126, 130 (1987).

*Hunnewell* v. *Hunnewell, supra* at 363-364. Here, according to the record we have before us: (1) there was no previous request for continuance (see *Ackroyd's Case, supra* at 220; *Monahan* v. *Washburn, supra* at 127-128); (2) the proceedings had not been protracted or particularly contentious (contrast *Hunnewell* v. *Hunnewell, supra* at 363; see also *Gaspar* v. *Kassm,* 493 F.2d 964, 969 [3d Cir. 1974]); (3) the medical documentation of the wife's disabling condition was complete and convincing; (4) the husband offered no contrary documentation; (5) the record does not show that the husband would have been prejudiced by the continuance sought (see *Monahan* v. *Washburn, supra* at 128); and (6) the wife made a specific time request which was not unreasonable (contrast *Hunnewell* v. *Hunnewell, supra* at 363). We cannot say that the wife's "course of action ha[d] been unreasonable." *Monahan* v. *Washburn, supra* at 130 (Hennessey, C.J., concurring). We recognize the importance of the judge's opportunity to observe the wife in the courtroom. See *Hunnewell* v. *Hunnewell, supra* at 363. Here, however, the judge's exposure to the wife was brief[4] and, indeed, he later recalled that he was sensitive to her condition at the time because she was using a portable oxygen tank. If the judge doubted the medical reports, he could have requested further documentation or testimony. He could reasonably have conditioned the grant of a continuance. See *Davis* v. *Operation Amigo, Inc.,* 378 F.2d 101, 103 (10th Cir. 1967); *Latham* v. *Crofters, Inc.,* 492 F.2d 913, 915 (4th Cir. 1974). We are not assisted by any contemporaneous finding by the judge as to the reasons for his denial of the motion. Compare *Hunnewell* v. *Hunnewell, supra* at 363.[5] In the cir-

---

[4] The docket entries show no prior involvement with the case by the judge. He had, however, encountered the wife about two months earlier at a divorce seminar. That episode is described later in this opinion.

[5] We pause briefly to comment on the possibility that the denial of the motion may have been motivated by the judge's desire to dispose of cases. Pressure in this respect may be felt acutely by judges in sessions to which cases are specially assigned. It cannot be gainsaid that there is need efficiently to dispatch litigation. See *Hunnewell* v. *Hunnewell,* 15 Mass. App. Ct. at 364; *Beninati* v. *Beninati,* 18 Mass. App. Ct. at 535. Cf. *Beit* v. *Probate & Family Court Dept.,* 385 Mass. 854, 858-860 (1982). The effort

Botsaris *v.* Botsaris.

cumstances, we unhesitatingly conclude that, on the information before the judge at the time of his ruling and as shown in the record before us, it was error, without more, to deny the wife's motion for continuance.

2. *The subsequent proceedings.* Faced with the prospect of an immediate contested trial which her physician unqualifiedly said she could not reasonably undergo, the wife proceeded to negotiations. The effort consumed the entire court day until the parties reported settlement shortly after 4:00 P.M.[6] After hearing, judgments of divorce nisi were entered which incorporated the written settlement agreement. We hold that those portions of the divorce judgments which incorporate the separation agreement must be vacated and new proceedings held on the questions of property division, alimony, insurance, and other financial considerations.[7] We do so because we think that the error in the denial of the motion to continue constituted an unfair administration of justice. The wife had a right to trial and, as we have held, she had shown "good cause" for continuance of that trial. That right was effectively taken from her. The judge's later conclusory findings (in action on motions for a new trial and for relief from judgment) that the settlement agreement was fair and reasonable and that, based on his observations and those of a court officer, on the day of settlement

___

to resolve cases finally must, however, be tempered by the need to convey a real and perceived sense of the fair administration of justice. *Monahan* v. *Washburn,* 400 Mass. at 129. A delicate balance must be struck. A probate judge, perhaps uniquely, has both the opportunity and the burden to impart, within reasonable limits, sensitivity for the plight of those whose marital difficulties have led them to the court for the resolution of wrenching problems with untold ramifications. The patient and careful exercise of that function has effects which should be of concern to every probate judge. See *Slaughter* v. *McVey,* 20 Mass. App. Ct. at 769-770.

[6] In their briefs to this court counsel take liberties, the husband's counsel more egregiously, in making statements about particular events during the course of the negotiations which are not supported by the record. We do not, of course, consider those allegations. The parties agree, however, that the wife was assisted by oxygen from a portable tank throughout the day.

[7] The remaining portions of the judgments are affirmed. See *Yanolis* v. *Yanolis,* 402 Mass. 470, 473-474 (1988). Cf. *Mailer* v. *Mailer,* 387 Mass. 401, 405 (1982).

negotiations the wife was "alert," "competent," and "all right" have, in what we hope are the unique circumstances of this case, no significance, and we need not deal with the propriety of those conclusions.[8] Nowhere in the record is there any challenge to the wife's allegation that she could not then participate in a trial on the merits or to the medical evidence submitted to support that contention. Even if the judge was correct in his later determination that the settlement agreement is objectively fair and reasonable,[9] that result would not cure the practical deprivation of the fundamental right to a trial.

---

[8] The hearing on the merits of the actions for divorce (irretrievable breakdown under G. L. c. 208, § 1B), and on the settlement was perfunctory. It is reported in a four-page transcript and began with a recital by the wife's counsel of the essential elements of provisions of the settlement respecting financial matters. We set out in full the colloquy of the judge and the parties with respect to the agreement.

THE COURT: "Do you understand the terms of the agreement?"
MRS. BOTSARIS: "I don't know what I will do for Blue Cross, Blue Shield. I am a hundred percent nondeductible, with continuing illness because of . . ."
THE COURT: "No, no, ma'am."
MRS. BOTSARIS: "They changed that?"
THE COURT: "Do you understand the terms of the agreement?"
MRS. BOTSARIS: "Yes."
THE COURT: "Have you gone over them with your counsel?"
MRS. BOTSARIS: "Um hum."
THE COURT: "And you accept the terms?"
MRS. BOTSARIS: "I have to."
THE COURT: "No, you don't have to, ma' am. Do you accept them?"
MRS. BOTSARIS: "Yes, I do."
THE COURT: "All right. Have you gone over them with your counsel:?"
MRS. BOTSARIS: "Yes."
THE COURT: "And you accept them?"
MRS. BOTSARIS: "Yes."

The judge made no attempt to probe the wife's expressed concern and reluctance. Such an effort surely would not have taken long and might well have made this appeal and its consequences unnecessary. The judge then made no explicit finding that the agreement was fair and reasonable.

[9] The record is insufficient to allow us to make an independent determination in this regard. We note, however, that the wife might well obtain less favorable results after new proceedings. We also observe that under the agreement and the judgments the provisions with respect to alimony, medical insurance and expenses, and life insurance (the only provisions about which the wife made specific objection at the hearing on the motion

3. *The motion to recuse.* About two months prior to the pretrial proceedings the judge had been a panel member at a program entitled "Going to Trial — What if You Don't Settle." The wife was a member of the audience. Following the presentation there was a confrontation between the wife and the judge. An attorney who was also a panel member intervened and the judge left the building. On the date of the pretrial proceedings, the judge remembered the wife and the incident. The wife then made no motion to recuse the judge. Almost two months after entry of the judgments, the wife filed such a motion, alleging the judge's partiality because of their prior encounter and a statement made by him during the program that he looked unfavorably upon litigants who retained successive attorneys during divorce actions. (The wife was at pretrial represented by her fourth attorney.)

We need not rehearse the familiar standards by which a judge's obligation to disqualify himself are measured. See *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 18 Mass. App. Ct. 446, 448-449 (1984), and authorities cited. Suffice it to say that, at the time of the pretrial proceedings, the judge apparently satisfied himself that "he passed the internal test of freedom from disabling prejudice." *Lena* v. *Commonwealth*, 369 Mass. 571, 575 (1976). We also assume that the judge concluded that this was not "a proceeding in which his impartiality might reasonably be questioned." S.J.C. Rule 3:09, Canon 3(C)(1)(a), as appearing in 382 Mass. 811 (1980). See *Lena* v. *Commonwealth, supra.* The wife's failure then to register an objection, "although possibly explicable as merely a tactical abstention by counsel," *ibid.*, would tend to bolster that conclusion. Nevertheless, in view of the prior incident with the wife, the judge might well have disqualified himself on his own motion. On this record, we do not say that his failure

for relief from judgment) are merged in the judgments and do not survive. Those provisions thus are subject to modification upon a showing of a material change in circumstances. See *DeCristofaro* v. *DeCristofaro,* 24 Mass. App. Ct. 231, 235 (1987).

to do so was error. We think, however, in the circumstances, any further proceedings should be held before a different judge.[10]

4. *Conclusion.* Those parts of the judgments of divorce nisi which incorporate the settlement agreement of the parties are vacated. In all other respects the judgments are affirmed. The cases are remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*

---

[10] In view of our disposition, it is unnecessary to consider the wife's appeal insofar as she claims error in the denial of her motion for a new trial and for relief from judgment.