NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-301

J.R.

vs.

K.R.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The wife, K.R., appeals from a judgment of divorce nisi entered by a judge of the Probate and Family Court denying alimony and dividing the marital estate.  On appeal, the wife claims that the judge erred in assessing the wife's need, incorrectly calculated the income of her husband, J.R., undervalued the "7-Eleven" franchise (7-Eleven) owned by the husband and his parents, and improperly divided marital property in light of the husband's potential inheritance.  We affirm.

Background.  We present the relevant facts and procedure as found by the Probate and Family Court judge, "supplemented by undisputed facts in the record and reserving certain facts for later discussion."  Connor v. Benedict, 481 Mass. 567, 568

(2019).  The husband and the wife married in India in 2013 in an arranged marriage.  The wife lived in India until late 2015, when she moved to the United States to live with the husband and his parents.  The wife spoke no English and knew no one else in the United States.  The husband and the wife had two children together, one born in 2016 and the other in 2018.  After her first pregnancy, the wife had lingering health complications and had "serious reservations" about having more children.  She testified that "she did not want to have a second child because she was concerned about the effect a second pregnancy would have on her health."  Despite her concerns, the husband "forced her into sex, resulting in her second pregnancy."  The wife "credibly testified that the [h]usband engaged in physical, sexual, and emotional abuse of her during the marriage."

The wife was the primary caretaker of both children and handled the cooking and cleaning for the entire household while the husband and his parents controlled the household finances. Despite the wife's desire to work, the husband prohibited her from working outside the home.  The husband earns his money through "Man Mahant, Inc." ("Man Mahant"), an S-Corporation, which owns a 7-Eleven located across from TD Garden and North Station.  The husband and his parents purchased the 7-Eleven by "sav[ing] money for six to seven years, including four to five

2

years within the marriage."  The husband owns sixty percent of Man Mahant and his parents own the remaining forty percent.

Since their separation in 2019 the husband has lived and shared living expenses with his parents while the wife has lived alone and works part-time as a grocery store cashier.  The wife's job opportunities are restricted by health issues from her pregnancies and her limited English skills.

After trial and "consider[ing] all required statutory factors" the judge awarded the wife legal custody of the children, no alimony, and ordered the husband to pay the wife $546.12 monthly -- representing a fifty percent share of the marital estate -- until the full value of the estate is paid. The judge further ordered the husband to pay an additional $372 per week in child support to the wife.

Discussion.  1.  Alimony.  The wife argues that the judge erred in failing to assess the required alimony factors, in attributing only $300 per week in "additional wages" to the husband's income where the husband determines (and, according to the wife), underreports his own wages, and in failing to consider that the husband used business funds for personal purposes.  She also contends that the judge should not have considered the property division when deciding her need for alimony.  The arguments are unavailing.

3

We review the amount of an alimony award for an abuse of discretion.  See Cavanagh v. Cavanagh, 490 Mass. 398, 405 (2022).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  See Dolan v. Dolan, 99 Mass. App. Ct. 284, 290 n.6 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  In fashioning an alimony award,

> "[a] judge must consider and weigh all the relevant factors [under G. L. c. 208, § 53 (a),] but where the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage'" (citations omitted).

Cavanagh, 490 Mass. at 407-408.

Here, the judge made detailed findings reflecting careful consideration of all relevant § 53 (a) factors for which evidence was presented.[1]  The judge considered inter alia:  that the marriage was six years and eleven months long; the age of the husband and the wife; the wife's health issues stemming from her pregnancies, including stomach pain, vomiting, ulcers, infections, and heart problems; the husband's income, including wages, officer compensation, and profits from the 7-Eleven; the

---

[1] We note the judge's comprehensive findings of fact, rationale, and thoughtful legal analysis.

4

wife's current employment; the relative employability of both parties; the husband's financial contributions to the marriage; the wife's contributions, including her care for the family; and the fact that the parties "led a frugal lifestyle" throughout the marriage.

The judge also made specific and detailed findings regarding the husband's income. He found that the husband earns wages from working at the 7-Eleven and reviewed the last three years of wages reflecting pay of $59,160 in 2019, $49,400 in 2020, and $36,400 in 2021 "consistently [reflecting a weekly] income of $500 in wages." The judge determined that the husband could work more at the store or get another minimum wage job to earn an additional $300 a week, thus the judge attributed $800 in weekly wages to the husband. While the wife claims that the husband's earning capacity could be higher, the judge must "determin[e] a fair balance of sacrifice between the parties" and has broad discretion. Pierce v. Pierce, 455 Mass. 286, 297 (2009). Where, as here, the husband's income is inconsistent and reliant on the success of the 7-Eleven, and he has no other skills or experience, it was within the judge's discretion to

5

attribute minimum wage to the husband.[2]  See Crowe v. Fong, 45

Mass. App. Ct. 673, 680 (1998).

Moreover, the judge weighed other potential sources of

income for the husband.  He noted, for example, that the husband

split expenses with his parents, paid his parents, and

referenced some evidence that the husband paid "personal bills

and credit cards" from accounts in the name of Man Mahant, Inc.

However, the husband claimed that his father paid for some of

the husband's personal bills, and the wife did not present

evidence concerning the source of the funds.  Ultimately, it was

within the credibility determination of the judge at trial to

determine the source of the money.  See Johnston v. Johnston, 38

Mass. App. Ct. 531, 536 (1995).  "[T]he credibility of a

[witness] . . . who appeared at trial is quintessentially the

domain of the trial judge, in which the judge's assessment is

close to immune from reversal."  Id.  Thus, without additional

evidence, we cannot say the judge abused his discretion in

determining the husband's income.[3]

---

[2] The judge also noted that "Man Mahant had a negative income" in 2020 and 2021, and that insufficient credible evidence was presented at trial to determine "whether Man Mahant will return to profitability or continue to operate at a loss."

[3] In various portions of his findings, the judge noted the absence of credible evidence at trial regarding sources of or amounts of income.  The judge also found that neither party presented credible evidence of the tax effect of potential

6

We now turn to the wife's claim that the judge improperly considered the property award to determine she has less need for alimony. When determining alimony and child support the judge must follow the three-step analysis articulated in Cavanagh, 490 Mass. at 410-411. Consistent with the Cavanagh analysis, the judge calculated alimony first and child support second, then child support first and alimony second. The next step in the analysis requires the court to

> "Compare the base award and tax consequences of the order that would result from the calculations in step (1) with those of the order that would result from the calculations in step (2) . . . . The judge should then fashion an order which would be the most equitable for the family before the court, considering the mandatory statutory factors set forth in G. L. c. 208, § 53 (a), and the public policy that children be supported as completely as possible by their parents' resources, G. L. c. 208, § 28, and then fashion the order such that it reflects, or alternatively is responsive to, those considerations. Where the judge chooses to issue an order that does not include any award of alimony, the judge must articulate why such an order is warranted in light of the statutory factors set forth in § 53 (a)."

Id. at 410-411. Here, the judge determined that the most equitable use of the parties' income would be to use "both parties' gross incomes in the award of child support" because it serves the best interest of the children and therefore no income remained to consider for alimony. In doing so, the judge

awards of alimony and child support. The record supports these findings.

considered all § 53 (a) factors including the wife's ability to maintain the frugal lifestyle experienced during the marriage in light of the property division.

Despite the wife's assertions, the judge was correct in considering the property division as "the adequacy and reasonableness of an [alimony] award must be viewed in its entirety." Johnston, 38 Mass. App. Ct. at 537. Indeed, in some cases it is proper to deny alimony when an equitable division of property can generate sufficient income for a spouse's needs. Id. Here, the judge carefully considered the wife's need, "the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage," and noted that the wife lives alone in a rented apartment, regularly attends events with the children, and that she cooks and prepares meals in advance for herself and the children. Young v. Young, 478 Mass. 1, 6 (2017), quoting Pierce, 455 Mass. at 296. There was, however, no other credible evidence presented regarding the wife's current lifestyle, including that her lifestyle needs could not be met by the property distribution. Furthermore, the cases the wife cites confirm that alimony determinations rest within the judge's discretion after considering all relevant factors. See C.D.L. v. M.M.L., 72 Mass. App. Ct. 146, 160 (2008) (within judge's discretion to

8

refuse to "factor" investment income); <u>Grubert</u> v. <u>Grubert</u>, 20 Mass. App. Ct. 811, 818 (1985) ("an order for division of property cannot be viewed apart from alimony").  Accordingly, the judge reasonably concluded, on the record before him, that the combination of child support and the equitable property division met the wife's needs consistent with the standard of living established during the marriage.  See <u>Young</u>, 478 Mass. at 8.  Because the judge considered all required factors under G. L. c. 208, § 34, and made findings reflecting consideration of equities between the parties in light of the evidence provided, we discern no clear error, and thus no abuse of discretion in the alimony award.[4]

2.  <u>Marital property</u>.  a.  <u>Valuation of property</u>.  The wife contends that the judge erred in valuing the 7-Eleven at $100,000 because there was clear evidence of higher worth and

---

[4] The wife submitted a letter pursuant to Mass. R. A. P. 16 (l), as appearing in 481 Mass. 1628 (2019), to suggest that the trial judge must consider the tax consequences of an alimony award.  See <u>L.J.S.</u> v. <u>J.E.S.</u>, 464 Mass. 346, 350 (2013).  This is unpersuasive, "[i]f parties do not request the judge to consider particular tax consequences and do not introduce reasonably instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues." <u>Jones</u> v. <u>Jones</u>, 103 Mass. App. Ct. 223, 239 (2023).  Here, there was no evidence presented of the tax consequences of an alimony award.

there was no methodology to support his conclusion.  We disagree.

We discern no error in the judge's valuation of the 7-Eleven based on the evidence presented at trial.  "Valuation of a business is a question of fact."  Bernier v. Bernier, 449 Mass. 774, 785 (2007).  When determining value, a judge may "reject expert opinion altogether and arrive at a valuation on other evidence" (citation omitted).  Id.  "Unless clearly erroneous, the trial judge's determination of value will stand." Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 863 (1989).

Here, the rationale for the judge's conclusions is apparent in his findings and rulings.  Neither the husband nor the wife provided a qualified expert on business valuation; the husband's expert witness was not qualified to provide valuation of the 7-Eleven; and the wife's expert witness did not consider the selling prices of comparable 7-Eleven stores, or "otherwise factor Man Mahant's status as a franchise, and its associated limitations, into his calculation of an appropriate fair value." Because the judge did not credit either witness, he was left to determine the value of the 7-Eleven without expert valuation based on the remaining evidence presented.  See Lavin v. Lavin, 24 Mass. App. Ct. 929, 931 (1987) ("A trial judge enjoys wide discretion in ruling on the qualifications of an offered

10

expert").  He considered the 7-Eleven's business records, that the business was recovering from the downturn caused by the COVID-19 pandemic, that the husband had attempted to sell the 7-Eleven for $150,000 and failed, that the value of the 7-Eleven consists primarily of goodwill, that the store was not currently making a profit, and ultimately found the fair value of the business to be $100,000.  See Lavin, 24 Mass. App. Ct. at 931-932 (judge could value husband's equity in business despite no ready market value).  The judge weighed the evidence available and, without other credible evidence of the value of the 7-Eleven, the judge's findings are not "a valuation that is materially at odds with the totality of the circumstances."  See Bernier, 449 Mass. at 785.

b.  Division of property.  Finally, we consider whether the judge erred in dividing the present marital estate in half, resulting in the wife only receiving thirty percent of the present value of the 7-Eleven in light of the husband's potential inheritance and the wife's contributions to the family.  We discern no error in equally splitting the property between the husband and the wife.  Our review of a judgment pursuant to the equitable distribution statute, G. L. c. 208, § 34, proceeds under a two-step analysis.  "First, we examine the judge's findings to determine whether all relevant factors

11

in § 34 were considered." Bowring v. Reid, 399 Mass. 265, 267 (1987). The second step requires us to determine whether the reasons for the judge's conclusions are "apparent in his findings and rulings." Redding v. Redding, 398 Mass. 102, 108 (1986). A judge's determinations as to equitable distribution will not be reversed unless "plainly wrong and excessive" (citation omitted). Id. at 107. Here, the judge made findings addressing all the relevant § 34 factors, and the distribution of assets reflected the judge's findings and rulings.

Indeed, the judge weighed the potential for inheritance from the husband's parents and properly did not attribute it to the husband. See Zeh v. Zeh, 35 Mass. App. Ct. 260, 264 (1993) ("[potential inheritance] does not qualify as property subject to division under G. L. c. 208, § 34," even though it may be considered as opportunity for future acquisition). While some future interests in property can be considered, "we have drawn a line around certain interests that are so speculative as to constitute nothing more than expectancies." Adams v. Adams, 459 Mass. 361, 374 (2011). See Davidson v. Davidson, 19 Mass. App. Ct. 364, 374-375 (1985) (anticipated inheritance from living testator unassignable to marital estate). Although the wife maintains that her contributions to the household give her an interest in that potential inheritance, such contributions do

12

not alter the legal status of the inheritance.[5]  There is no evidence in the record to suggest the husband's inheritance is any more than an expectancy.  See Adams, 459 Mass. at 374.  Accordingly, the judge did not abuse his discretion the division of the marital estate.

Judgment of divorce nisi
    affirmed.

By the Court (Meade, Neyman &
    Walsh, JJ.[6]),

Clerk

Entered:  November 21, 2025.

---

[5] We also note that the judge did consider the wife's contribution to the household:  "[the] [w]ife handled the domestic duties cooking and cleaning which allowed [the husband] and his parents to work and save money."

[6] The panelists are listed in order of seniority.