NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-60

OLIMPIA RAQUEL SAPERS

vs.

DAVID J. SAPERS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a judgment of the Norfolk Probate and Family Court modifying his child support obligation. On appeal, the father maintains that the judge abused her discretion in (1) determining the parties' incomes, (2) incorrectly applying the Massachusetts Child Support Guidelines ("guidelines"), and (3) awarding attorney's fees to the mother. The father also takes issue with the judge's decision to quash a trial subpoena directed to the mother's current husband ("husband"). We affirm and remand to permit the motion judge to consider the release of escrowed funds awarded to the mother.

Background. We summarize the relevant facts found by the judge, supplementing them with undisputed evidence in the record that supports those findings, and reserving other facts for later discussion. See Pierce v. Pierce, 455 Mass. 286, 288

(2009).  In 2015, the parties were divorced pursuant to a judgment that incorporated their separation agreement ("agreement").[1]  Under the agreement, the parties shared custody of their child and the father agreed to pay the mother $3,462 in monthly child support (above the minimum presumptive guidelines amount), subject to a yearly recalculation.[2]  At the time of the divorce, the father earned a yearly income of $199,992 from his successful candy business and the mother was unemployed with no income.

Between 2016 and 2018, the father's candy business deteriorated and, by 2018, closed.  In December 2016, he unilaterally decided to begin paying only $1,303 in monthly child support.[3]  In September 2017, the mother filed a complaint for modification.  By a counterclaim, the father sought a retroactive reduction of his child support obligations beginning

---

[1] The provisions of the separation agreement pertaining to the parties' child merged with the divorce judgment.

[2] The agreement was written with the expectation that the mother would become employed by August 15, 2015.  Pursuant to the agreement, the parties were to recalculate the child support payments on or about August 15 each year, or if there was a significant change in income for either party.  To facilitate this recalculation, the parties agreed to exchange tax returns and pay stubs at the time of review.

[3] The mother testified -- credibly, as found by the judge -- that she did not agree to the reduction in child support.  She filed a complaint for contempt; however, the father was adjudicated not guilty because the parties had failed to timely exchange tax returns and recalculate child support as agreed.  The father's support obligation remained unchanged, but he continued to pay only the reduced amount.

in December 2016.[4]  The parties then entered into a partial modification agreement ("modification agreement") that, among other things, required them to recalculate child support on November 15 each year "based on the prior year's tax returns" and "pursuant to the then current Massachusetts Child Support Guidelines."  The judge incorporated the modification agreement into a partial modification judgment on the father's counterclaim.

The sole issue remaining for trial was whether a retroactive reduction in the father's child support obligations was warranted for 2017 through 2020.  After trial, the judge determined that the father's income did not significantly diminish in 2017 and 2018 and left his support obligations for those years unchanged.  The judge retroactively modified the father's child support obligations for 2019 and 2020 to $624 and $479 per week, respectively.  The judge also awarded attorney's fees to the mother.

a.  <u>Father's income</u>.  As of the last day of trial, the father was unemployed and described himself as having "multiple failed businesses."  Throughout the proceedings, he failed to comply with the mother's discovery requests and filed incomplete financial statements indicating a sharp decline in his income.

---

[4] The father argued that, based on the "auto-adjusting" language in their agreement, a retroactive modification was required.

3

The mother filed multiple motions to compel and subpoenaed documents directly from financial institutions, the responses to which produced evidence of the father's financial circumstances. The judge found that since the divorce, the father regularly (1) received financial assistance in the form of gifts and forgiven loans from his family;[5] (2) misrepresented his income to financial institutions and the court; (3) spent more than his reported income but had little to no debt; and (4) played high-stakes poker, resulting in large deposits and transfers. After closely examining the evidence, the judge included in the father's income his monetary gifts from family and forgiven loans. The judge then imputed to the father a weekly income of $5,400 for purposes of calculating his 2017 and 2018 child support obligations, and imputed total weekly incomes of $4,800 and $3,092 for his 2019 and 2020 support obligations, respectively.

b. Mother's income. The mother remarried in 2018 and was unemployed at the time of trial. Pursuant to an antenuptial agreement, the mother and her new husband (husband) maintained separate assets and filed separate tax returns. Throughout the proceedings, the mother disclosed her finances; her financial statements reflected loans she received from her husband. Based

[5] Based on the evidence, the financial assistance from the father's family totaled around $478,200.

4

on the mother's trial testimony and financial statements, the judge found that that although the husband paid the "vast majority of their household's expenses," the mother reimbursed him each month for her child-related expenses, and at the time of trial, owed him $75,000 in living expenses and attorney's fees. Based on evidence of the mother's employment history and financial circumstances, the judge attributed to her a weekly income of $600 for 2017 through 2020,[6] excluding from that amount the contributions received from her husband.

Discussion. 1. Standard of review. "Our review of a child support modification judgment is limited to whether the judge's factual findings were clearly erroneous, whether there were other errors of law, and whether the judge appears to have based his decision on the exercise of sound discretion." Lizardo v. Ortega, 91 Mass. App. Ct. 687, 691-692 (2017). "When an agreement merges, and does not survive the judgment as an independent contract, a party seeking modification [must] demonstrate . . . a 'material change of circumstances' since the earlier judgment." Huddleston v. Huddleston, 51 Mass. App. Ct. 563, 564 n.2 (2001), quoting Harris v. Harris, 23 Mass. App. Ct. 931, 932 (1986). "When the judgment to be modified incorporates

---

[6] This attributed income amount was based on the mother's capacity to earn $15 per hour working forty hours per week, which the mother conceded, and the father did not challenge, at trial.

5

an agreement of the parties, we have said that, notwithstanding that the agreement does not survive the judgment as a binding contract, we nevertheless will 'review the findings to determine whether the judge gave appropriate consideration to the parties' intentions as expressed in their written agreement, . . . and to any changes in their circumstances since the last modification judgment.'"  Cooper v. Cooper, 62 Mass. App. Ct. 130, 134 (2004), quoting Huddleston, supra at 568.  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n. 27 (2014).

2.  Income for purposes of child support.  At the heart of the father's appeal is his contention that it was error for the judge to exclude from the mother's income financial household contributions from her husband, while at the same time including monetary gifts and forgiven loans from the father's family in the father's income.[7]  "Section I-A of the guidelines explicitly

_____

[7] The father maintains that the judge erred by not assessing the child's initial need for support before determining the parents' income and applying the guidelines.  This argument is not supported by the authority cited, including M.C. v. T.K., 463 Mass. 226, 231 (2012), which holds that a parent has a duty to support their child.

6

instructs on the definition of 'income,' and how that income should be calculated when determining a child support order. '[I]ncome is defined as gross income from whatever source regardless of whether that income is recognized by the Internal Revenue Code or reported to the Internal Revenue Service or state Department of Revenue or other taxing authority'; some twenty-seven sources of income are then listed," along with a catchall provision allowing for any form of income "not specifically itemized" in the guidelines.  Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 9 (2016), quoting Child Support Guidelines § I(A) (Aug. 2013).[8]  "The [child support] guidelines and our case law leave the definition of income flexible, and the judge's discretion in its determination broad."  Casey v. Casey, 79 Mass. App. Ct. 623, 634 (2011), citing Whelan v. Whelan, 74 Mass. App. Ct. 616, 625 (2009).

a.  Spousal contributions after remarriage.  The judge did not err in excluding from the mother's income her husband's financial contributions to their household.  "[T]he guidelines do not reflect a direct prohibition on contributions from a present spouse, nor do they include a direct command to include them."  Murray v. Super, 87 Mass. App. Ct. 146, 155 (2015).

---

[8] This language is identical to that in the guidelines' 2018 definition of income, except that the 2018 guidelines list twenty-nine potential sources of income.  Child Support Guidelines § I(A) (June 2018).

Rather, a judge is directed to consider several factors, including "how those funds [received from a spouse] are expended[,] . . . the lack of an obligation of the mother's husband to support the children, the manner in which the mother's and the children's lifestyles are altered by these funds, the discretion that the mother's husband maintains in payment of these funds, and the manner in which the mother would support her household absent these funds." Id. See Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 529 (2016) (inclusion of household members' financial contributions in parents' income must be justified by detailed findings). The judge weighed these factors in context, including the fact that (1) the mother and husband were married subject to an antenuptial agreement that created "no joint assets" between them, (2) the mother and husband had no joint bank accounts and the husband paid "the vast majority of their household's expenses," but was reimbursed monthly by the mother for expenses related to the child, and (3) the mother testified -- credibly, as found by the judge -- that she owed the husband $75,000 for attorney's fees and living expenses. The judge's credibility assessments are not lightly to be disturbed. See Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995) (credibility is "quintessentially the domain of the trial judge, in which the judge's assessment is close to immune from reversal on appeal

8

except on the most compelling of showings").  We see no abuse of discretion in the judge's treatment of the contributions from the mother's husband.  See Murray, supra, at 148, 155; Johnston, supra.

b.  Imputation of income to the father.  "Public policy dictates that children be supported by the financial resources of their parents insofar as is possible," M.C. v. T.K., 463 Mass. 226, 231 (2012), and "child support should be calculated as a percentage of parental income, up to a maximum income amount."  Id. at 232.  "The imputation of income is appropriate where a party has made vague, misleading, or untruthful entries on a financial statement," M.C., supra, at 240, and when "the [c]ourt finds that a parent has . . . undocumented or unreported income, [it] may reasonably impute income to the parent based on all the evidence submitted."  Child Support Guidelines § I(D)(1) (June 2018).

We will not disturb the judge's findings about the imputation of income, which were properly based on evidence that the father obstructed the discovery process, underreported income, and misrepresented his financial resources to the court and financial institutions.[9]  See Johnston, 38 Mass. App. Ct. at

_____

[9] "In circumstances where the [c]ourt finds that a parent has unreported income . . . [it] may adjust the amount of income upward by a reasonable percentage to take into account the absence of income taxes that normally would be due and payable

9

536; Child Support Guidelines § I(D)(1) (June 2018).  See also Salten v. Ackerman, 64 Mass. App. Ct. 868, 872-873 (2005) (in calculating father's child support obligation, judge considered father's evasiveness as to his finances); Crowe v. Fong, 45 Mass. App. Ct. 673, 678-679 (1998) (court entitled to draw inferences adverse to evasive party from uncertainties surrounding party's financial affairs).  Given the guidelines' expansive definition of income, the amount and ongoing nature of the assistance the father received, the evidence of his spending, and the absence of debt, we see no abuse of discretion in the judge's imputation of frequent gifts and forgiven loans to the father as income. [10]  See Croak v. Bergeron, 67 Mass. App.

---

on the unreported income."  Child Support Guidelines § I(D)(3) (June 2018).  We see no abuse of discretion in the judge's upward adjustment of the father's income by twenty-five percent given the evidence of his unreported income.  See Johnston, 38 Mass. App. Ct. at 536; Child Support Guidelines § I(D)(3) (June 2018).

[10] Although "the modified judgment should take into account the earlier, expressed desires of parties," Bercume v. Bercume, 428 Mass. 635, 644 (1999), "[p]arents may not bargain away the rights of their children to support from either one of them." Knox v. Remick, 371 Mass. 433, 437 (1976).  See Cavanagh v. Cavanagh, 490 Mass. 398, 409, 418 (2022).  The judge interpreted the parties' agreement to calculate child support "based on" the prior year's tax returns as allowing "other income of the parties" to be included in the calculation, an interpretation that was not clearly erroneous.  We see no error in the judge's conclusion that excluding other sources of income from the calculation would have improperly eliminated the father's child support obligations for 2017 and 2018, where his tax returns reflected negative income.  See Knox, supra.  The finding was supported by the evidence.

Ct. 750, 755-756 (2006) (judge may properly deny payor's request for downward modification of child support where, considering payor's financial circumstances -- including evasiveness about finances -- payor failed to meet burden of demonstrating material change in circumstances); Child Support Guidelines § I(D)(1) (June 2018) (imputation of income may be based on evidence of "parent's lifestyle, expenses and spending patterns").

3. Retroactivity of support order. The father takes issue with the judge's denial of his request for a retroactive reduction in his child support obligation for 2017 and 2018. The father contends, among other things, that the judge erroneously declined to modify the parties' 2015 agreement for support that exceeded the minimum presumptive guidelines order for those years. Although the father maintains that the judge abused her discretion in "departing" from the guidelines for 2017 and 2018, she did not. Rather, she concluded that the father failed to meet his burden of demonstrating a material change in circumstances for 2017 and 2018, because his imputed income for those years exceeded his income at the time of the 2015 agreement. Because the judge found that the father failed to demonstrate that his income decreased in 2017 and 2018 as compared to 2015, and she found no other relevant material change in circumstances for those years, she concluded that he

11

was not entitled to a downward modification of his support obligation for 2017 and 2018. In her written findings, the judge emphasized the recency of the parties' original agreement that the father would pay more than the guidelines amount and ruled that the father had failed to provide sufficient evidence of a change in either his circumstances or in the child's needs since that time to warrant a decrease in his support obligations. See Hoegen, 89 Mass. App. Ct. at 11, quoting Whelan, 74 Mass. App. Ct. at 627 ("a party is entitled to retroactive modification of a child support order 'where a judge finds that the parties' circumstances have materially changed and that such modification is in the best interests of the children'"). This ruling was supported by the evidence. See Wasson v. Wasson, 81 Mass. App. Ct. 574, 577-578 (2012) (presumption in favor of guidelines may be rebutted where applying guidelines would lead to order that is unjust, inappropriate, or not in best interests of child).

The judge did, however, find a relevant material change in circumstances for 2019 and 2020. The judge found that, in 2018, the parties agreed to cap child support in future years at the minimum presumptive order under the guidelines. The judge therefore considered the parties' intentions as expressed in their 2018 agreement, Cooper, 62 Mass. App. Ct. at 134, and for 2019, although the parties' combined income exceeded $250,000,

12

she calculated the father's support obligation at the minimum presumptive guidelines amount, consistent with the parties' 2018 agreement. For 2020, the judge reasonably found that the parties' combined income of $191,984 was below the guidelines' maximum of $250,000. Therefore, the guidelines presumptively applied to the entirety of the parties' 2020 combined income, and the judge calculated the father's support obligation at the presumptive guidelines amount. See Child Support Guidelines § II(C)(2) (June 2018).

4. <u>Motion to quash</u>. Twenty days before trial, the father subpoenaed the mother's husband, who filed a motion to quash and for a protective order. The judge quashed the subpoena on the first day of trial. Arguing that this was an abuse of discretion and deprived him of a fair trial, the father appeals.

"Trial judges have broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial" (quotation and citation omitted). <u>Mattoon</u> v. <u>Pittsfield</u>, 56 Mass. App. Ct. 124, 131 (2002). "It is within [the] court's power to vacate any subpoena which it determines is unreasonable, oppressive, irrelevant, or improper." <u>Hull Mun. Lighting Plant</u> v. <u>Massachusetts Mun. Wholesale Elec. Co.</u>, 414 Mass. 609, 616 (1993); see Mass. R. Dom. Rel. P. 45 (b) (identical to Mass. R. Civ. P. 45 (b), as appearing in 470 Mass.

13

1402 (2015)). We review for abuse of discretion. See Chambers v. RDI Logistics, Inc., 476 Mass. 95, 110 (2016).

The father did not attempt to depose the mother's husband or otherwise seek evidence of his financial resources and support of the mother during discovery; instead, just twenty days before trial, he served the mother's husband with a trial subpoena demanding his testimony and seeking detailed financial information, including documents and records related to all bank accounts, credit cards, investment accounts (whether individually or jointly held), paystubs, and copies of tax returns, utility bills, and mortgage statements for the prior two or three years. Whether the judge viewed the subpoena as overbroad, or untimely, or seeking information that was irrelevant and duplicative, as the mother suggested, or as an end-run on the discovery process, or some combination of the above, the judge was within her broad discretion in granting the husband's motion to quash and for a protective order protecting the husband or others from testifying about his finances. See Bishop v. Klein, 380 Mass. 285, 288 (1980) (denial of discovery motion not abuse of discretion where defendant waited four years to raise issue of access to plaintiff's records and sought production of those records only after case called for trial).

5. Attorney's fees. We have been asked to consider the award of attorney's fees in three contexts.

14

First, the father objects to the trial judge's posttrial award of fees to the mother. The court may, in its discretion, award costs and expenses or legal fees to a party. G. L. c. 208, § 38. If an award of attorney's fees "is within the range of reasonableness based on an objective evaluation of the services performed, it will be affirmed on appeal" (quotation and citation omitted). Schechter v. Schechter, 88 Mass. App. Ct. 239, 260 (2015). The judge, after trial, found that the father's noncompliance with discovery warranted an award of fees to the mother, ordered the father to pay a portion of the requested fees ($25,000) and held that the parties "shall otherwise be responsible for their own counsel fees and costs." The award was reasonably based on the judge's well-supported findings about the mother's costs in obtaining discovery, which, the judge found, increased because of the father's obstructive conduct. See Cooper, 62 Mass. App. Ct. at 141, quoting Downey v. Downey, 55 Mass. App. Ct. 812, 819 (2002) (opposing party's "obstructionist conduct which prolonged the proceedings" relevant to determination of attorney's fees).[11]

---

[11] The father notes that he requested fees in connection with his successful summary judgment motion, and that the judge deferred ruling on those fees. In connection with trial, the father neither requested these fees nor provided an affidavit of counsel to support such an award. The judge did not address the award of fees from the father's summary judgment matter, and the issue is not properly before us.

15

Second, the mother has asked this panel to order the release from escrow of funds awarded to her by the judge. In the alternative, she asks that the judge be "empowered" to address the issue. The judge, perhaps believing that the filing of this appeal divested her of jurisdiction to enforce the award of fees to the mother, denied the mother's motion to release fees "without prejudice subject to any ruling from the Appeals Court." On remand, the judge may, consistent with her prior rulings and our decision today, order the release to the mother of these escrowed funds.

Third, the mother requested appellate attorney's fees pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019). This request is denied.

<u>Judgment affirmed and case remanded for further proceedings consistent with this memorandum and order</u>.

By the Court (Sullivan, Massing, & Hershfang, JJ.[12]),

*Joseph F. Stanton*

Clerk

Entered: March 21, 2023.

---

[12] The panelists are listed in order of seniority.