NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-273

ADOPTION OF YAELIN (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Juvenile Court, a judge issued decrees finding the mother unfit to parent her two younger children, terminating her parental rights, and approving the adoption plan proposed by the Department of Children and Families (department). On appeal, the mother claims that the department failed to prove by clear and convincing evidence that she is unfit or that the termination of her parental rights served the younger children's best interests, and that the judge made several erroneous findings that infected the unfitness and termination determinations. We affirm.

---

[1] Adoption of Noah. Having reached the age of majority during the proceedings, the mother's oldest child, Dani, was dismissed from the petition, and therefore is not a subject of this appeal. The children's names are pseudonyms.

Background.  We summarize the relevant facts as found by the judge, who issued comprehensive, detailed findings of fact and conclusions of law.  The oldest child turned eighteen during trial, and the younger children were eleven and seven.  The department first became involved with the family in 2004 after receiving a report filed pursuant to G. L. c. 119, § 51A (51A report[2]), alleging neglect of Dani.  After multiple 51A reports were filed, Dani was removed from the mother's care three times, Yaelin was removed twice, and Noah was removed once.  At the time of trial, Yaelin had recently been placed in the same foster home as Noah.[3]  Yaelin and Noah both want to be adopted, and Noah's foster parents are committed to adopting him.[4]

The children were removed from the mother's custody in March 2019 due to a constellation of factors including untreated mental health issues, substance misuse, housing instability, domestic violence in the home, and the children missing several school days and doctors' appointments.

---

[2] In total, twenty-six 51A reports were filed and thirteen G. L. c. 119, § 51B, investigations were conducted.

[3] Yaelin was in a child-specific preadoptive placement, but ongoing behavioral issues escalated, and her foster parents asked the department to find her a new placement.

[4] Noah's foster parents had not made a commitment to adopt Yaelin when the judge issued her decision.

The mother had been in several abusive relationships and had allowed her partners, and other acquaintances, to live in her home with the children.  Dani was the victim of physical abuse by her mother's partners and, along with her siblings, witnessed physical abuse of the mother.  After the children's removal in March 2019, the mother engaged in services recommended by the department but continued to allow acquaintances to live in her home, knowingly putting reunification at risk.

Around May 2020, the mother disclosed to the department that she was in a relationship with a woman (partner) whom she had met at a substance abuse treatment program.  The two began living together; although the partner was cooperative with the department, she was unwilling to participate in family therapy until the eve of trial.  Dani reported that the partner was occasionally violent and would throw her cellphone when frustrated with the mother, testimony credited by the judge.

Dani left her placement with the maternal grandmother after an argument with her and resided with the mother and her partner from November 2021 to March 2022.  When Dani first returned to her mother's home, things went well, but over time, that changed.  When the partner was upset with Dani, she would yell at her and take away Dani's cellphone, iPad, and laptop,

3

consequently denying her access to her social worker and attorney. Additionally, Dani slept in the living room of the mother's apartment and had limited privacy.

On March 28, 2022, the mother took Dani to the hospital because Dani had threatened to hurt herself. Dani reported that she felt unsafe at home, and that her mother and partner would scream at each other and the partner punched a hole in the apartment wall. Dani felt that the mother did not try to keep the home safe and ignored Dani when Dani struggled with her mental health; the mother, the judge found, was unwilling to believe Dani's concerns were legitimate and failed to respond appropriately until Dani "was in crisis." Dani did not return to the mother's home after she was discharged from the hospital. The judge found that the mother's treatment of Dani was some evidence of her unfitness to care for the younger children.

Ultimately, the judge found that the department met its burden, concluding that the mother did not understand the role her domestic relationships played in affecting her parenting, and she has continued to prioritize her relationships over her children. The judge explained that although the mother had engaged in services, she had not shown that she could implement the skills she learned, as evidenced by her failed reunification with Dani. For these reasons, the judge found that

4

reunification was not in the best interests of the younger children, and the mother's unfitness was likely to continue for the foreseeable future.

Discussion. 1. Standard of review. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). On appeal, "[w]e give substantial deference to a judge's decision that termination of a parent's rights is in the best interest[s] of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).

2. Unfitness. The mother argues that the judge erred in finding that she was still in a cycle of domestic violence relationships, was unwilling or unable to engage in family therapy, was unable to obtain services for her children or meet their needs, that her housing stability was at risk, and that she was not in stable recovery from her substance use disorder. However, these subsidiary findings, included among the judge's

5

300 findings of fact and twenty conclusions of law, find ample support in the record and are not clearly erroneous.[5]

The mother also contends that the judge erred in unduly relying on Dani's testimony. We are not persuaded. Although parental fitness must be assessed for each child, "a judge may rely upon a parent's past conduct with regard to older children to support a finding of current unfitness as to a different child, so long as that evidence is not the sole basis for the judge's unfitness determination." Adoption of Luc, 484 Mass. 139, 145 (2020). Past parental conduct is relevant to current parental fitness where the evidence supports a continuing pattern of the conduct which has led to the removal of other children "and the [past] conduct was not too remote." Adoption of Larry, 434 Mass. 465, 469 (2001).

Here, Dani's testimony about the failed reunification three months before trial was evidence of the mother's most recent parenting, including the missed opportunity to demonstrate improvement, as well as the mother's continuing parenting

---

[5] Even if the judge's finding that the mother did not engage in parenting classes was clearly erroneous, the error was not central to the ultimate conclusion of unfitness or the termination decisions. See Adoption of Ilian, 91 Mass. App. Ct. 727, 730 (2017). Indeed, as we noted above, the judge acknowledged the mother's substantial compliance with her service plan tasks, but found, with support in the record, that the mother had been unable to implement the skills she had gained.

6

deficits. Although the mother argued that Dani's testimony was not credible, a judge's finding on witness credibility is "quintessentially the domain of the trial judge [so that (her)] assessment is close to immune from reversal on appeal except on the most compelling of showings." Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 496 (2012), quoting Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995). The judge was in the best position to determine credibility, and did not err in crediting Dani's testimony. See id.

The mother next argues that the finding that she is still in a relationship that involves domestic violence is erroneous because the only evidence of current abuse is Dani's testimony. Family violence is relevant to a judge's determination of parental unfitness because "witnessing domestic violence, as well as being one of its victims, has a profound impact on children." Adoption of Zak, 87 Mass. App. Ct. 540, 543 (2015), quoting Custody of Vaughn, 422 Mass. 590, 599 (1996). While it is true that "[i]solated problems in the past or stale information cannot be a basis for a determination of current parental unfitness" (citation omitted), Adoption of Rhona, 57 Mass. App. Ct. 479, 487 (2003), past incidents of neglect may be considered "to predict future ability and performance." Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997). The

7

judge properly considered the mother's pattern of abusive relationships and Dani's eyewitness account of what occurred recently in the mother's home.

Dani's testimony was not the sole basis of the judge's unfitness determination. The judge also found that the mother's partner had no interest in family therapy, and although the mother did show a willingness, family therapy would not be useful without the partner. The judge also found that the mother's failure to act when Dani told her that she was struggling with her mental health was evidence that the mother was unable to meet the needs of the children.

Additionally, the judge found that while the mother's housing had stabilized, her financial reliance on her partner for most living expenses, given their "tumultuous at best" relationship, raised concerns about the risk of future housing instability. The judge did not credit the mother's testimony that she became sober in December 2020 as it conflicted with her treatment records and her partner's testimony. Although the mother had been substance free since January 2022, the judge found that she was unable to maintain consistent and candid reporting about her substance misuse or to plan for the children's safety in the event of relapse, which, the judge found, had occurred during the pendency of the case. The

8

judge's findings that the mother remained unfit to parent Yaelin and Noah at the time of trial and that the unfitness was likely to continue indefinitely were well supported by the subsidiary findings.

3. Best interests of the children. The termination of parental rights must be in the best interests of the children, which "requires a court to focus on the various factors unique to the situation of the individual[s] for whom it must act." Custody of a Minor, 375 Mass. 733, 753 (1978). "In determining whether the best interests of the child[ren] will be served by issuing a decree dispensing with the need for consent" to adoption, "the court shall consider the ability, capacity, fitness and readiness of the child[ren]'s parents . . . to assume parental responsibility, and shall also consider the plan proposed by the department . . . ." G. L. c. 210, § 3 (c).

The judge found that although the mother participated in some services, ultimately, her parenting skills were not improved to the point that she was able to "assume parental responsibility" of Yaelin and Noah. As an example, during supervised visits, the mother was repeatedly asked by the department to not bring certain food items due to the children's medical issues, but chose not to follow those directives. During one visit, the mother told Noah it was okay for him to

eat an item on the prohibited foods list, leading to postvisit vomiting. Noah often had behavioral struggles before and after visits. Indeed, Noah's teacher noticed a change in his behavior on days that he visited the mother. And, Yaelin experienced anxiety and would become physically ill before visits.

The children's emotional health has improved since their removal. Yaelin has shown improved behavior and pride in herself. Noah's behavior and development have also improved. The judge properly took "into account the child[ren]'s condition while living with [their] mother as contrasted with [their] development after removal from her care." Adoption of Terrence, 57 Mass. App. Ct. 832, 835 (2003).

Although the mother has made some strides, the evidence supports the judge's conclusion that, since March 2019, the mother has been "unable to properly parent these children," and has failed to demonstrate the understanding and commitment that would be required to do so. The children want to be adopted and are entitled to permanency. While a child's preference is not

10

dispositive, it is a factor the judge can consider.  See

Adoption of Nancy, 443 Mass. 512, 518 (2005).

Decrees affirmed.

By the Court (Blake, C.J.,
  Henry & Hershfang, JJ.[6]),

*Paul Little*

Clerk

Entered:  November 18, 2025.

---

[6] The panelists are listed in order of seniority.

11